## Pusey *et al. versus* Wright *et al.*

Where certain parties constructed a lateral railroad over the land of another, under an agreement with the owner, wherein it was stipulated that the road should be constructed in a particular manner, and with a turnout for the benefit of the owner of the land; the remedy for a violation of these clauses of the agreement, is not by injunction to restrain the use of the road until the terms of the contract are complied with, but by action at law, to recover compensation for the damages thereby sustained.

A party to the record cannot be examined as a witness, in equity, without an order of court being first had for that purpose.

There is no difference in respect to the burden of proof, between proceedings at law and in equity; in both, the party maintaining the affirmative of the issue has it cast upon him.

If the defendant's answer be responsive to the bill, it will require two witnesses, or one witness and strong corroborating circumstances, to overcome it.

If the answer set up a different contract from that stated in the bill, the burden of proving it is on the defendant.

If the bill set forth a contract between the parties, a denial in the answer that it existed *modo et formâ*, is not sufficient; the defendant must show how it existed, and wherein it had no existence.

APPEAL IN EQUITY from the Common Pleas of *Lancaster county.*

[Pusey *et al. v.* Wright *et al.*]

This was a bill in equity originally exhibited by Jonathan Pusey against Archibald Wright and John Wright, and Thomas S. Richards, their agent and manager, praying for an injunction to restrain the defendants from using a certain lateral railroad constructed by them over the complainant's land, from the Pennsylvania Railroad to the Shawnee Furnace owned by the said Archibald and John Wright, until they should have complied with the terms of the contract under which the said railroad was constructed.

Jonathan Pusey died, pending the suit, and his heirs were substituted as plaintiffs. The case was heard in the court below, on bill, answer, replication, and proofs. The facts of the case are sufficiently set forth in the opinion of the court below, which was as follows:—

"Jonathan Pusey being seised and possessed of seven acres of land in the borough of Columbia, including a part of the Shawnee Run and a mill dam and pond connected with a saw and grist-mill belonging to him, below the same, entered into a contract with the respondents, who had commenced proceedings under the Act of Assembly in such cases provided, to obtain from the Court of Common Pleas of Lancaster county the legal authority to make a lateral railroad; in consequence of which contract, the said proceedings were discontinued, it being agreed, that the said railroad should be laid out and made through the said seven acres of land, extending from the Shawnee Furnaces above the same, to other property belonging to the defendants, below the seven acres and beyond the Philadelphia and Columbia Railroad.

"In pursuance of that agreement, Thomas S. Richards, the manager of the said furnaces, and the said Jonathan Pusey went together upon the said seven acres. The route through the same for the said railroad, was selected and staked out. The said manager proceeded with his hands and workmen to grade the road upon the said route, making embankments where they were required, and preparing the bed of the road for cross ties and rails. During the progress of the work, Jonathan Pusey was several times present, saw the work advancing, made no objection, but was apparently satisfied with the same, nor was any dissatisfaction intimated, until the embankments were entirely completed, and some of the cross ties were put down, or at least ready to be laid. Then, for the first time, complaints were expressed, not by Jonathan Pusey, but by Isaac Pusey, his son and agent, who complained that Archibald Wright had not treated them well in regard to the damages. Such is the defendants' answer.

"The complainants' bill avers that there was a further agreement, for a connection of the plaintiffs with this lateral railroad and their common use thereof when completed, and for a turnout to the Philadelphia and Columbia Railroad, which the defendants have refused to make and allow; that the said lateral railroad

[Pusey *et al. v.* Wright *et al.*]

was not laid out or constructed in accordance with the contract between the parties, but in violation thereof; in consequence of which the run and dam were obstructed—that the defendants had also further agreed to make and keep in repair fences on each side of the said road along its whole course, which they had likewise neglected, and that the complainants thereupon proceeded to repossess and reoccupy the said seven acres, by enclosing the same with a fence, which the defendants afterwards prostrated.

" The defendants' answer positively avers that the lateral railroad aforesaid was surveyed and ultimately laid out, staked, graded, and completed just where it now is, with the full knowledge and consent of the said Jonathan Pusey, in pursuance of the agreement between the parties; that no complaint was heard or known in regard to the route, until it was graded and prepared for receiving the rails; and the answer positively denies that it was further agreed, as the bill avers, that the complainants should have the privilege of making a connection with or have common use of the said railroad, or that the defendants would make a turnout to the Philadelphia and Columbia Railroad, or that they were to make and keep in repair a fence on each side of the said lateral railroad; and it denies that there was any other attempt made by the complainants to repossess or reoccupy the premises occupied by the said railroad, than by the erecting of a fence across the same after it was completed and in use, which was immediately prostrated by the defendants in their lawful use of the said road, which from its completion they have continued to use up to the time of the making of such answer.

" The bill admits, and the answer avers, an agreement, on the part of Jonathan Pusey, by which the defendants were fully authorized to enter upon the seven acres in question, for the purpose of making this lateral railroad. This the defendants had a right to make, according to law, upon the previous required proceedings which they had commenced, and which would have imposed upon them the condition only of payment of the amount of damages that would have been assessed ·for the compensation of the complainants. No assent of the complainants was necessary to enable the defendants to proceed. But the answer avers that upon notice served on the said Jonathan Pusey of their petition filed, he dissuaded them from proceeding, and readily and freely consented that they should go on with the said railroad through his premises, saying that the damages might afterwards be adjusted between Archibald Wright and himself. The answer avers that the result of this conference was the contract set forth in the answer, and the discontinuance of the proceedings in the Court of Common Pleas.

" Were the deposition of Thomas S. Richards duly before us, his testimony would verify every averment of the answer; but

[Pusey *et al. v.* Wright *et al.*]

although it sufficiently appears that he had no interest in the matter complained of, yet being charged as one of the defendants of record in the case, to make him a witness for his co-defendants, it was necessary to obtain a previous order for his examination.

"There being no such order, his deposition is excluded; and the same rule applies to that of John Cooper, even if the release in his case had divested his responsibility: 2 *Daniell's Pract. in Chancery* 488, 489 ; 2 *Madd. Ch. Pr.* 315, 316.

"But the facts set forth in the answer, relative to the commencement of the proceedings in the Common Pleas, the agreement with Jonathan Pusey, his knowledge of the route of the railroad, and progress of the work without objection, up to the completion of the same, in readiness for the laying of the cross ties and rails, stand uncontradicted by the testimony, and there is no evidence to establish the complainants' averments with respect to the stipulations about the privilege of connection and common use, turnout, and erection and repair of fences.

"The question, then, is fairly raised, whether, if the complainants have been damnified in the premises, an injunction is the proper remedy.

"The complainants could demand that remedy only upon the ground that this railroad of the defendants, made through their land, is a *nuisance ;* and had it been made without their consent or authority of law, it would have been a nuisance to the complainants—differing in its character from a mere temporary trespass, in the permanence of the injury; which characteristic appears to be the recognised warrant for an injunction. But in all cases of this sort, courts of equity will grant an injunction to restrain a nuisance, only when the fact is clearly made out upon determinate and satisfactory evidence. For if the evidence be conflicting and the injury doubtful, that alone will constitute a ground for withholding this extraordinary interposition : 1 *Coop. Ch. C.* 313 ; 3 *Mylne & Keen* 369; Hart *v.* The Mayor of Albany, 3 *Paige's R.* 210, 213 ; 2 *Story's Eq.*, § 924, 925.

"If the railroad in this case was made, as the answer avers, in strict conformity to the agreement between Jonathan Pusey and the defendants, the only question that can arise is in relation to the amount of damages, if any, sustained. No matter what may be the value of the damages, there could be no ground for an injunction. If, in constructing the road, the defendants exceeded the proper bounds, in the embankment, for instance, making it so as to cover more ground than necessary, yet, if the complainant Jonathan Pusey looked on and suffered the embankment to be completed and prepared without objection, and only excepted to the work after it was done, there could be no just claim, on his part, for an injunction to remove the road as a nuisance to him or his heirs, or to prevent the defendants from using and enjoying

[Pusey *et al. v.* Wright *et al.*]

the same. The soundness of that discretion (said Lord BROUGHAM in 3 *Mylne & Keen*) seems undeniable, which would be very slow to interfere, where the thing to be stopped, while it is highly beneficial to one party, may very possibly be prejudicial to none. The great fitness of pausing much, before we interrupt men in those modes of enjoying or improving their property which are *primâ facie* harmless or praiseworthy, is equally manifest. And it is always to be borne in mind, that the jurisdiction of this court over nuisance, by injunction, at all, is of recent growth; has not, until very lately, been much exercised; and has, at various times, found great reluctance, on the part of the learned judges, to use it, even in cases where the thing or the act complained of was admitted to be immediately and directly hurtful to the complainant.

"In regard to the Shawnee Run, or the complainants' mill-dam, it is certainly not shown by the evidence, that any injury has yet accrued to the complainants' water-power; and with respect to any future possible effect, another remark may be appropriately quoted from the same case, 3 *Mylne & Keen* 169. It is also (says the Lord Chancellor) very material to observe, what is indeed strong authority of a negative kind, that no instance can be produced of interposition by injunction, in the case of what we have been regarding as eventual or contingent nuisance.

"We are, therefore, of opinion, that the complainants are not entitled to the relief which they seek by their bill:

"1. Because the defendants were entitled, by pursuing the proceedings which they had commenced, to make the lateral railroad from their works, through the complainants' land, compensating the said Jonathan Pusey, or his heirs, in such damages as the appraisers, whom the court should appoint, might determine; and those proceedings were discontinued, at the suggestion of the complainant, Jonathan Pusey, and his consent and agreement to allow the defendants to enter upon his land, and lay out, grade, and construct said road.

"2. Because the defendants did enter upon the complainants' land aforesaid, by his consent; and in conjunction with him, selected the route, and laid out the road, pursuant to an agreement between them; and if any objection was made, it was not by Jonathan Pusey, nor his agent, until the road was in such a state of forwardness as to be ready to receive the cross-ties and rails—the said Jonathan Pusey having, in the mean time, witnessed the progress of the work without objection. After acquiescing so long, it was too late to apply for an injunction to remove all this work as a nuisance, which the defendants had commenced with his knowledge and consent.

"3. And because, as the case stands upon the bill and answer, and the depositions, it appears to us that there is nothing between

[*Pusey et al. v.* Wright *et al.*]

the parties, but the question of damages, which the complainants may have sustained, by reason of the said railroad; and for the solution of that question, we think, the injunction prayed for is not the remedy.

" The complainants' bill is, therefore, dismissed, with costs."

From this decree the present appeal was taken by the complainants.

*B. & Ed. Champneys*, for the appellants.—The injury complained of, if it exist without authority of law, and without the consent of the owners of the soil, is such an one, as in its nature, would be a proper subject for the exercise of the power of injunction. The principle is, that whenever the wrong is of such a character as to amount to a permanent occupation of the property, thereby affecting the owner's right to the freehold, and depriving him of the proper enjoyment of his estate, an injunction can be issued to prevent it, or to restrain its further continuance : 2 *Story's Eq.*, § 928; Hart *v.* Mayor, &c., of Albany, 9 *Wend.* 578–9; *Adams' Eq.*, 403–4, 407–8; 1 *Johns. Ch.* 319; Bonaparte *v.* Camden and Amboy Railroad Company, 1 *Bald.* 210–33; 7 *Johns. Ch.* 335–6; 6 *Id.* 499, 500; *Drewry on Injunctions*, 36 *Law Lib.* 167, 168, 170; Bevans *v.* The Turnpike, 10 *Barr* 176; Commonwealth *v.* Bank of Pennsylvania, 3 *W. & S.* 193; Wesley Church *v.* Moore, 10 *Barr* 280.

The burden of proof, under the pleadings, was upon the defendants : Bush *v.* Livingston, 1 *Caine's Cas.* 72; Allen *v.* Crobcroft, *Barnard. Ch.* 373; 2 *Eq. Cas. Abr.* 247; 3 *Greenl. Ev.*, §§ 250, 253, 289; 2 *Story's Eq.*, § 1529; 2 *Dan. Ch. Pr.* 242; Hart *v.* Ten Eyck, 2 *Johns. Ch.* 74; Boyd *v.* McLean, 1 *Id.* 589.

*Shaeffer* and *Dickey*, for the appellees.—The rules governing the granting of injunctions are so fully set forth in the opinion of the court below, that we do not deem it necessary to discuss them. And the point made as to the burden of proof is equally free from difficulty : 2 *Story's Eq.*, § 1528; 3 *Greenl. Ev.*, §§ 283, 285, 287, 289; Horton's Appeal, 1 *Harris* 67; Eberly *v.* Groff, 9 *Id.* 251; *Adams' Eq.* 21; 2 *Dan. Ch. Pr.* 9, 10.

The opinion of the court was delivered by

THOMPSON, J.—The heirs of Jonathan Pusey, deceased, were substituted as plaintiffs in this case, the bill having been filed in his lifetime.

The bill sets forth that an agreement was entered into between Jonathan Pusey and the defendants, by which the former granted to the latter a right to construct a private railroad through his property in the borough of Columbia, consisting of a lot of about seven

[Pusey *et al. v.* Wright *et al.*]

acres, from their furnaces, situate above his property, on Shawnee Creek, so as to enable them to connect their road with the Columbia Railroad below him; with the privilege to him to use the same in common with them, with certain turnouts and connections, to be constructed for his benefit; the defendants to fence and maintain fences on each side of the road, through the plaintiffs' property; and for any damage he might sustain by reason of the construction of the road, compensation to be made, in addition to the privileges mentioned, by the payment of such money as might be awarded him for damages, by three disinterested men, mutually to be chosen by the parties. The bill charges that the road was not located according to the agreement of the parties—that the common use was not permitted to the plaintiff—that the connection and turnout were not constructed—that the assessors of the damages were not agreed upon by defendants, and the fencing was not done according to contract; and concludes with a prayer for a perpetual injunction against the maintenance and use of the road by the defendants. In addition to the general prayer that the defendants be required to answer the several matters charged in the bill, they were specially interrogated in regard to them, "whether the said defendants did not make and enter into a covenant and agreement with complainant, for the privilege of laying out and making as aforesaid a railroad through the property aforesaid of your complainant, and upon the terms and conditions, and with the restrictions and limitations as hereinbefore set forth and expressed to be done and performed and observed on the part of said Archibald and John Wright."

In answer to the bill, the respondents admit that they constructed their road on and over the property and premises of the plaintiffs, under a contract with the said Jonathan Pusey, and license by him to do so. That the agreement was entered into after application made to the Court of Common Pleas of Lancaster county, to obtain the right of way through the said premises under the laws of this Commonwealth, and upon the solicitation and suggestion of the said Pusey, that there was no necessity for such proceedings, as they could amicably agree therefor; that the road was and is located and constructed in strict conformity with the agreement. That the said Jonathan Pusey saw and knew of the location and construction of the road, and that no objection was made to the location and construction by him or his agent present, until after the work had so far progressed as to be ready for the rails. They further admit that damages to the premises were to be compensated upon the award or assessment of three men to be chosen for that purpose by the parties, and aver their readiness and willingness now and at all times to unite with complainants in making choice of them, and to pay what may be awarded by them; but they positively deny the existence of any of the other covenants or

[Pusey *et al. v.* Wright *et al.*]

agreements alleged in the bill, such as the right to a common use of the road—the agreement to permit a connection therewith—the construction of a turnout, and fencing and maintaining fences along it.

The issue being thus made, the complainants introduce evidence on the subject of the injury done the property by the construction of the road. They now complain and assign for error, the rejection of the testimony of John Cooper, which they say tended to prove their case. But this is not apparent. He was not present at any bargain between the parties, but speaks of declarations of Jonathan Pusey only, on this point. His testimony was chiefly as to the injury to the premises, and damages. But being a party plaintiff on record, as guardian, and there being no order first had for his examination as a witness, the court decided that he was liable for costs, and his transfer of the trust to his ward, who had arrived at age, did not discharge him from liability; that he was therefore incompetent, and accordingly rejected his testimony, as they did that of Thomas S. Richards, a witness for the respondents. There was no error in this ruling.

In the opinion of the Court of Common Pleas the case stood simply on bill and answer, and as the *onus probandi* rested upon the plaintiffs, and as they had not made proof of the contract as averred, they were not entitled to a decree. They also ruled upon the merits, against them. There is no difference in respect to the burden of proof between proceedings at law and in equity; in both, the party maintaining the affirmative of the issue has it cast upon him. In this case, the plaintiff set up a contract with the defendants, by which permission was given to construct the road in dispute, and in which it was averred that the latter undertook to do certain things, which, it is alleged, they did not do, and for a violation of the contract in not doing, and for relief, this bill was brought. The defendants admit the contract for permission to construct the road, and deny the conditions and stipulations alleged by plaintiffs, the non-performance of which constitutes their ground of complaint. Standing thus, no doubt can exist but the plaintiffs were bound to prove their case. The grounds upon which they rested for relief, were denied. It is plain, therefore, that they must be proved, or their title to relief must fail. And against the responsive denial of defendants, this would, according to the practice in equity, require two witnesses, or one, and strong corroborating circumstances: *Story's Eq. Pl.*, § 49; Eberly *v.* Groff, 9 *Harris* 251; 3 *Greenl. Ev.*, §§ 285, 287.

But it is contended, that the defendants set up a contract different from that charged in the bill, and that their answer is a confession and avoidance. We do not think so. The answer admits the contract for right of way, and agreement to pay damages upon the assessment of men to be chosen, and avers the building of the

[*Pusey et al. v. Wright et al.*]

road pursuant to the contract, and on the ground agreed upon, and interpose a positive denial as to the matters charged, which constitute the equity of the plaintiffs' bill. It is not doubted, but that, if a different contract had been set up by defendants, which was alleged to have superseded the one charged by plaintiffs, they would have had the affirmative of the issue. The answer, then, would not have been responsive to the bill—it would have been by way of confession and avoidance, and have required proof. But the answer here admitted the contract, and stated its terms, but denied the existence of stipulations in it alleged by the plaintiffs as the foundation for their claim to relief. This did not require the defendants to make proof, if the plaintiffs did not. The substance of the bill was thus denied, and this is what is required in an answer. If a contract be set forth, and the defendant be called on to answer it, a denial that it exists, *modo et formâ*, would not be good, according to chancery practice, for this is subject to the implication that it existed in some other form. To avoid this, the defendant should state how it existed, and wherein it had no existence. This would be a good traverse: 2 *Dan. Ch. Prac.* 259; 3 *Greenl. Ev.*, § 285. The defendants have conformed to this rule; they admitted the contract, and alleged how it existed, with a denial also of the facts alleged by plaintiffs. This was certainly a good traverse. But further, the plaintiffs called on the defendants to testify in answer to the interrogatory quoted as to the existence of the agreement. The answer was directly against the plaintiffs on the material questions. Being thus made witnesses by the plaintiffs, their testimony must stand against them unless rebutted, and this also would require two witnesses, or one with corroborating circumstances: *Adams' Eq.* 21; Eberly v. Groff, *supra;* Commonwealth v. Cullen, 1 *Harris* 143. The case of Eberly v. Groff is authority directly in point, that the answer here was responsive to the bill. Nor do we think the cases of Bush v. Livingston & Townsend, 2 *Caine's Cases* 72, or Hart v. Ten Eyck, 2 *Johns. Ch. Rep.* 74, cited by the plaintiffs' counsel, at all militate against the principle here laid down.

The entire evidence before the court related to the damage alleged to have followed from the construction of the road. We recollect none sustaining the plaintiffs' allegation of the terms of the contract. They therefore failed to make out a case for a decree, if otherwise entitled.

It seems to me that, independently of the question just discussed, and for argument's sake, considering that point as standing in favor of the plaintiff, that the case was one for compensation at law, and not to be remedied by injunction to enforce abatement of the road as a nuisance, or the perpetual restraint of its use. It was constructed under a contract, as admitted by both parties, with a stipulation to pay damages for consequent injury, and with a tribunal

[Pusey *et al. v.* Wright *et al.*]

agreed upon for their assessment. The non-construction of the connection and turn-out, with any common use of the road stipulated for, are very properly referable to a period subsequent to the completion of it, as they were not alleged to be conditions precedent thereto. The right to redress could only fully arise when the contract was broken, and in regard to the stipulations, with the exception of the assessment of damages, could only be broken on the completion of the road, or the entire failure to complete it. On the happening of either contingency, the common law courts could afford full and adequate redress for any breaches in the contract. So, too, for any damage for encroachment on the stream. It was susceptible of being compensated, either by the award of the men to be chosen, or if not within the purview of this provision, then by a suit at law. But to permit the party to construct their road under an amicable contract, after a solicited withdrawal of compulsory proceedings, which would in all probability have resulted in giving the right, subject only to the condition of the payment of damages; to acquiesce, with a full knowledge, in the operations of the defendants, and their large expenditure of money, until the work was about to be completed, without objection, and then ask to destroy the whole because of a non-compliance in some particulars, is a course so contrary to equity as to be a vain effort. Equity cannot respond to a request so unreasonable, when compensation can be fully made at law, which is the great rule for withholding the strong arm of the chancellor.

It becomes unnecessary further to notice the assignments of error in this case, and for the reasons given the decree of the Common Pleas is　　　　　　　Affirmed at the costs of appellant.