# Coleman *versus* Ross.

*Averment or denial in answer, when not evidence for defendant.— Pleadings strictly construed against pleader.—Costs in proceedings in equity, how awarded.*

1. A denial or averment in an answer to a bill in equity not directly responsive to the bill, is not evidence for the defendant.

2. A complainant, the patentee of a car-wheel improvement, having entered into partnership by articles in which the patent was included as firm property while the partnership continued, after the business of the firm had been stopped and discontinued, sold to a railroad company a single right to make and use the patent wheel, the price for which the respondent afterwards received: the answer to the bill did not deny the date of the sale as alleged, but only averred that it was made while the partnership continued: the master appointed found that the firm was dissolved before the date of the sale. *Held,* That as the effect of the respondent's averment was that the

[Coleman v. Ross.]

partnership continued until after the sale was made, which was found against him by the master, the date of the sale as alleged in the bill was admitted : consequently, the complainant was entitled to the price of the right sold, which the respondent had received.

3. Costs in equity are at the discretion of the court, and when, before bill filed, the defendant has offered to do complete equity, the costs of the complainant will ordinarily be refused : but where no such sum is offered him, as the final decree shows to have been due, his costs will not be withheld.

APPEAL from the District Court of *Allegheny county.*

This was a proceeding on the equity side of the court, founded on a bill for an account filed June 5th 1861, by James M. Ross against William Coleman, in which the complainant averred that a contract of copartnership was entered into, 13th May 1859, between the parties for manufacture of car-wheels, under patents granted to plaintiff, and vending rights to use said invention, in which the interest of Coleman was two-thirds, and that of Ross one-third; that in consideration of $500 paid by Coleman to Ross, the latter had transferred to the firm his patterns, implements, &c.,—set forth an assignment to the firm of said patents, and that in consideration of this assignment, there was to be paid to Ross $6000 out of the net profits, when they should amount to $30,000; that in consideration also of said assignment, Coleman agreed to furnish the firm with capital and credit; that Ross was to be paid a salary of $1000 per annum, the firm to continue during the term of said patents, and any extension thereof; that the patents were granted to Ross about 30th March 1858; that about 1st June 1860, Coleman, against the consent of Ross, and in violation of the articles of copartnership, refused further to continue the business; that in consequence of such refusal, the same has been stopped since that date ; and that up to the time of such stoppage the firm had been deriving great profits from the business. Complainant further charged, that the net profits of firm to date of discontinuing business (exclusive of Ross's salary) was $4058.82, and that all moneys, &c., are in Coleman's hands. He claimed out of the net profits $811.37, being the proportionate part of his share of the profits, payable to him in consideration of his said assignment of his patent rights to the firm ; also, one-third the residue, to wit, $1082.48; and alleged that after the business was stopped by defendant, to wit, about the last of August 1860, the plaintiff sold the Philadelphia and Reading Railroad Company a single right to manufacture and use for their own road, the car-wheel patented by him, and that on the 15th September 1860, the defendant received therefor, from said company, $475, which last sum plaintiff claimed ; as also a balance of salary, to wit, $626.41. He claimed as due him on account of the various matters above stated, the sum of $2995.25; with damages for his alleged

[Coleman *v.* Ross.]

breach of the articles of copartnership in refusing to continue the business, &c. And charged further, that upon the stoppage and discontinuance of business, the patent rights reverted to him, and that defendant had possession of the firm books and papers, and refused complainant access thereto.

The defendant's answer was filed August 12th 1861, admitting the agreement of copartnership, as set forth in bill, but denying that defendant, against the consent of plaintiff, refused further to continue the business, alleging that the partnership was dissolved by mutual consent of plaintiff and defendant; and that the net profits, without deducting the salary claimed by plaintiff, did not exceed $3642.52.

Defendant also denied that plaintiff was entitled to the said sum of $811.37, as the contingency upon which he was to receive individually from the firm any portion of its profits as consideration for said assignment, had never arrived, and never could arrive. He admitted "that defendant received from the Reading Railroad Co. $475, as a compromise for the use of said patent by said company, and license to said company to use the same; but he denied that said compromise and license were made and granted after the dissolution of said firm; and to the contrary, averred that said license and compromise were granted and made while said firm was in full existence." He denied that said patent rights reverted to plaintiff upon the dissolution of the firm, or that he had refused plaintiff access to the firm books and papers, but averred that he had free and frequent access thereto, and had actually made or pretended to make balance-sheets and statements therefrom.

The case was thereupon referred to C. Hasbrouck, as master, who stated an account between the parties.

To this report the following exceptions were filed:—

1. The master erred in deciding that the partnership was dissolved by mutual consent; the preponderance of evidence, as plaintiff or complainant alleges, showing said dissolution to be the act alone of the defendant.

2. In not allowing plaintiff the one-fifth of the profits, in addition to the one-third of the remainder.

3. If the preponderance of the evidence on the question of dissolution is with the plaintiff, as he avers it is, then the master erred in not allowing plaintiff damages.

4. In his disposition of R. H. Smith & Co.'s bill of $30; and also in not crediting plaintiff with two-thirds of $50, being plaintiff's expenses for company on trip west, in June 1859.

5. The master having decided that the partnership was dissolved as early as 1st of August 1860, and having decided (if the court should be of opinion that that particular point was pro-

perly before him) that the patents reverted, or should revert to complainant, immediately on the dissolution of the partnership, erred in crediting the item of $475 to the firm of Ross & Coleman, it being, as the evidence shows, money paid by the Reading Railroad Company for the privilege of using said patents on their road, at or after the last part of August 1860, and therefore of right should be allowed to complainant.

The court below, on hearing, dismissed all the exceptions except the fifth, which was sustained for the following reasons:—

"The master finds that the partnership was dissolved by mutual consent on the 1st day of August, A. D. 1860. The bill alleges that, on or about the last of August 1860, after the business of the firm had been stopped and discontinued by the defendant, the complainant sold to the Philadelphia and Reading Railroad Company the right to manufacture and use for their own road, the car-wheel patented to the complainant, and specified in the articles of copartnership, the consideration for which, viz., $475, was received by the defendant, on or about the 15th day of September 1860. The answer does not deny that the sale was made at the time specified in the bill, but admits that the respondent received the sum mentioned as a compromise for the use of the patent by the company. It denies that the compromise for the use of the patent was made after the dissolution of the partnership, and avers that it was made while said firm was in existence, but he has given no proof to sustain this allegation.

"We are of opinion that upon the dissolution of the partnership, the patents reverted to the complainant, and as the sale thereof to the railroad company, or leave to use the same, is alleged to have been made on or about the last of August 1860, and as this allegation is not denied nor disproved, the consideration belonged to the complainant and not to the firm. The fifth exception is therefore sustained, and the master's report is to be corrected accordingly.

"The counsel for the defendant contended, on the argument, that the decree in favour of the complainant should be without costs, but we see no reason in this case for departing from the ordinary rule. Let the report of the master be corrected in conformity with the foregoing opinion, and the decree be drawn up by complainant's counsel under the rule."

Which decree was the error assigned by the defendant in his appeal.

*Hamilton & Acheson* and *Thomas B. Acheson*, for appellant.

*Samuel A. & W. S. Purviance*, for appellee.

The opinion of the court was delivered, November 5th 1863, by

[Coleman *v.* Ross.]

STRONG, J.—This was a bill for an account between partners. The defendant having put in an answer, a reference was directed to a master who stated an account, which in a single particular was corrected in the court below. Whether that correction was properly made is the leading question now. The bill charges that on or about the last of August 1860, after the business of the firm had been stopped and discontinued, the complainant sold to the Philadelphia and Reading Railroad Company a single right to manufacture and use for their own road, but for no other, a car-wheel which had been patented to the complainant, and specified in the articles of copartnership as belonging to the firm during its continuance, and that on or about the 15th day of September 1860, Coleman, the defendant, received from the railroad company about $475, the price of the patent right so sold. The answer admits that the defendant received from the railroad company $475, as a compromise for the use of said patent, and license to use the same, but denies that the compromise and license were made after the dissolution of the firm, and to the contrary avers that the license and compromise were granted and made while the firm was in full existence. It is not now controverted that if the license was sold after the termination of the copartnership, the entire sum of $475, its price, belongs to Ross, the complainant. The report of the master (unexcepted to in this particular) establishes that the firm was dissolved by mutual consent on the 1st of August 1860, yet he treated the $475 as firm assets, and credited the complainant with only one-third of it. The court below corrected his report in this item, and decreed that the entire sum should be paid to the complainant.

It is to be observed the answer does not deny that the sale of the license was made at the time specified in the bill, or that the defendant received its price. It denies only that the sale or compromise was made after the dissolution of the partnership, and it avers that when the sale was made the firm was still in existence. This denial and averment are not responsive to the bill, and they are not therefore evidence for the defendant. The bill alleged that the sale was made on or about the last of August 1860, and after the business of the firm had been stopped and discontinued, not after the firm had been dissolved. The stoppage of the business and the dissolution of the firm were not necessarily at the same point of time, and the evidence submitted to the master shows that they were not in this case. It was, therefore, incumbent upon the defendant, who averred it, to make out by evidence, independent of his answer, that the sale of the license was made, not in the last of August, as averred in the bill and not directly denied, but before the 1st of August, when

[Coleman v. Ross.]

the firm was dissolved. The burden of proof was upon him, and it was even against his own virtual admission. By not denying that the sale of the patent was made in the last of August 1860, and only denying that it was made before the firm was dissolved, he but averred that the firm continued in existence until after the last of August, and that has been found against him. Pleadings are always construed strictly against the pleader. The averment in the bill of the time of sale is, therefore, substantially admitted. And if it were not, there is no evidence to justify a finding that the sale was made during the continuance of the partnership. The only evidence offered is that in October 1860, the complainant credited himself in the books of the firm with one-third of the $475, and told Dr. Fuller that was his share of the money received from the railroad company. But neither the entry nor the declaration to Dr. Fuller state when the money was received, nor when the patent right was sold. Besides, at the time when the entry was made, Ross was claiming that the firm had never been dissolved with his consent, nor at all, rightfully. It would be giving undue effect to such a declaration, were we to hold it an admission that the license to the Reading Railroad Company had been made before the 1st of August. We are of opinion, therefore, that the court committed no error in decreeing that the complainant is entitled to the whole of the sum for which the patent right was sold.

This virtually disposes of the only remaining question presented by the appeal. It is doubtless true that costs in equity are at the discretion of the court, and when, before a bill has been filed, the defendant has offered to do complete equity, and thus render a suit unnecessary, costs of the complainant will ordinarily be refused. But this is no such case. No such sum was offered to the complainant as the decree of the court shows to have been his due. And even the offer which was made has not been renewed in all the progress of the suit. There is nothing, therefore, to justify us in withholding costs.

And now, to wit, November 5th 1863, this cause having been argued by counsel and considered by the court, it is ordered, adjudged, and decreed, that the decree made by the District Court be affirmed, and it is further ordered, adjudged, and decreed, that the appellant pay the costs of this appeal.