Virginia Bussier *v.* Harry Weekey, Francis C. Dade, Jr., Lewis Frech, Cebert H. Newhall, John Wesley Durnell and Walter Noble, Appellants.

*Jurisdiction, equity—Restraint of trespass.*

Under the Act of June 16, 1836, P. L. 784, the court has undoubted power to restrain the commission of trespasses where the remedy at law will be inadequate. If the trespass is fugitive and temporary, then adequate compensation can be obtained by action at law, and there is no ground to justify the interposition of a court of equity. If, on the other hand, trespasses are constantly recurring and threatening to continue, or if the threatened trespass contemplates a permanent occupation and use of the plaintiff's property, the rule is different and the jurisdiction is sustained.

*Equity pleading—Probative effect of answer—Balance of proof—Rules of evidence.*

The answer must be responsive to the bill in order to give it the probative effect which requires the testimony of two persons or its equivalent to establish the balance of proof in favor of the plaintiff.

To give the answer this probative character two things are essential : (1) It must be confined to the matters averred in the bill, negativing, qualifying or explaining them and not going beyond and setting up distinct

matters in avoidance or defense.   (2) The response must be from the defendant's own knowledge as he would testify if examined as a witness except in the rare cases in which he is called upon to answer also as to information and belief.

A failure in these two essentials limits the effect of the answer merely to putting the plaintiff to the necessity of proving the facts alleged in his bill, and the rule requiring two witnesses, or one witness with corroborating circumstances, to counteract its effect does not apply.

Except as to the effect of a responsive answer in equity, the burden of proof and the rules of evidence are the same at law and in equity.

Argued Dec. 13, 1898.   Appeal, No. 133, Oct. T., 1898, by defendants, from decree of C. P. No. 1, Phila. Co., Sept. T., 1895, No. 131, in favor of plaintiff.   Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.   Affirmed. Opinion by SMITH, J.

Hearing on bill, answer and proofs.   Before BRÉGY, J.

It appears from the record that this case was before the Superior Court on appeal and hearing on bill and demurrer reported in 4 Pa. Superior Ct. 69, where that court reversed the decree of the court below sustaining demurrer to the plaintiff's bill.

The facts appearing from the bill and answer are as follows :

Your oratrix complains and says :

1. That she is the widow of Joseph B. Bussier, and that she resides in the county of Philadelphia, at No. 240 Harvey street, Germantown.

2. That she is the owner in fee of a certain messuage and tract of land (being the said No. 240 Harvey street) situate on the southeast side of the said Harvey street at a distance of four hundred and twenty-five (425) feet southwestwardly from the southwest side of Green street in the Twenty-second Ward of the said city of Philadelphia, containing in front on the said Harvey street sixty (60) feet and extending in length or depth of that width, at right angles thereto, two hundred and fifty-three (253) feet, more or less, to the northwest side of a certain street called Lafayette street, having acquired title thereto by a certain conveyance from Edwin Hergesheimer 'and wife, dated the 5th day of April, A. D. 1867, and recorded at Philadelphia in deed book J. T. O., No. 41, page 211, etc.   That the said messuage and tract of land is now and has been ever since her possession of the same, and for a long time prior

thereto, properly enclosed and fenced both on the two fronts and the sides, by stone walls and wooden fences, and that the said walls and fences have always been continuously maintained in good order and condition, and on the same lines without departing therefrom.

3. That, as appears by a recent survey, made by Walter .Jones, Esq., the then surveyor and regulator of the ninth district, the fence extending from the said Harvey street to the said Lafayette street, along the northeastern boundary of your oratrix's property is about eleven (11) inches northeast of the line as called for by her deed; that the said fence has been maintained in that position at least ever since your oratrix's ownership of the aforesaid premises began, whereby, as she is advised and therefore avers, she has acquired a good and indefeasible title to the said strip of eleven (11) inches, extending along the northeast side of her property. from said Harvey street to the said Lafayette street, by open, notorious, continuous and adverse possession of the same during twenty-eight years; and that the said boundary fence at the time of the trespass herein complained of was in fairly good order and condition, and that the same was in no need of renewal.

4. That, notwithstanding the above facts, three of the said defendants, to wit: Harry Weekey, Francis C. Dade, Jr., and Walter Noble, having recently acquired title, as your oratrix is informed and believes, to certain premises on the northeast adjoining and bounding upon the said strip of eleven (11) inches, have disregarded her title to the same and as well personally as by their agents and employees have entered into and upon her said premises, and without proceeding as is required by the act of assembly in the case of boundary fences needing repair or renewal, and without consulting or advising with your oratrix, have proceeded not only to rebuild a large part of the said fence, but also to move the same southwestwardly, and have set part of the said fence back upon your oratrix's property along the northeast boundary thereof at various distances, from four (4) inches or thereabouts to thirteen (13) inches or thereabouts, and that they, the said three defendants, have further threatened to commit a similar trespass, and move and rebuild in a similar way the rest of the said fence. That in committing the said trespass the said three defendants further broke down and de-

stroyed part of a retaining wall erected along the southeastern boundary of your oratrix's premises, on said Lafayette street, and also broke down and destroyed part of a board fence in front of the same, and also broke down and carried away parts of a retaining wall along the Harvey street front of your oratrix's premises, for all of which said trespass and destruction your oratrix has no adequate remedy at law.

5. That, as your oratrix is informed and believes, the said three defendants, since committing the said acts of trespass hereinbefore complained of, have conveyed the Harvey street front of the said premises, adjoining those of your oratrix, to the said defendants, Lewis Frech and Cebert H. Newhall, and the rear or Lafayette street front to the said John Wesley Durnell; but that all and every of the said defendants have at all times neglected and refused to repair the damages committed in the said trespass, or to replace the said fence in its original location.

Your oratrix, therefore, needs equitable relief, and prays that your honorable court may decree:

1. That the said defendants be decreed to restore and put up again the said retaining wall and board fence so destroyed and broken as aforesaid along the southeastern boundary of your oratrix's premises, and also the retaining wall so destroyed and broken on the Harvey street front as aforesaid.

2. That the said defendants be ordered to move the said fence so placed upon your oratrix's premises as aforesaid back to its original location.

3. That the said defendants, their heirs and assigns, having restored the said fences and walls to their original condition and location, be perpetually enjoined from hereafter moving the said fence, or any part thereof, back or interfering with the same in any way or otherwise changing the visible boundary line between the property of your oratrix and that of the said defendants in the future.

4. Such other and further relief and process to that end as to your honorable court may seem meet and the case may require.

And she will ever pray, etc.

### ANSWER.

These defendants now and all times saving and reserving

unto themselves all manner of objections and exceptions to the plaintiff's bill and every part thereof, for answer thereto say:

1. We admit the averments of the first paragraph of said bill.

2. We admit the title of plaintiff to the portion of land described in the deed to her as set out in the second paragraph of said bill. We deny the other averments in said paragraph set forth.

3. We admit that for a short time prior to the survey in the third paragraph of said bill set forth, plaintiff had wrongfully taken and retained possession of a strip of land belonging to her neighbor on the northeast. We deny that this possession had been taken and continued for twenty years, and we deny all the other averments in said paragraph set forth.

4. We admit that Harry Weekey, Francis C. Dade, Jr., and Walter Noble, during the year 1895, peaceably took possession of a part of the land purchased by them, including a part of the strip wrongfully taken by plaintiff as above set forth. This retaking was with the full knowledge of plaintiff, who daily saw all that was being done, and did not object thereto. Nothing actually belonging to plaintiff was taken, nor was she injured in any way. All that was taken actually belonged to said Weekey, Dade and Noble, and has been continuously since then, and still is in the possession of themselves and their grantees. We deny the other averments in said paragraph set forth.

5. We admit the conveyances in the fifth paragraph of said bill set forth. We deny that any damage was caused the plaintiff, or that we were ever asked to repair any alleged damage. We admit that said fence for a distance of some ninety feet from Lafayette street remains, as in law and equity it should, on the true line between the properties.

And defendants further aver that plaintiff has a full, complete and adequate remedy at law for the alleged trespasses and injuries, and for the recovery of possession of the land now in the peaceable possession of defendants and their grantees; and as to the strip fronting on Harvey street, now in plaintiff's possession and for which she has no title, they aver that they have not now and never have had, any intention of taking possession thereof, by any act of their own since plaintiff objected thereto, but assert their constitutional right to recover such possession by due process of law in the common-law courts and that a

court of equity is without jurisdiction to prevent them from so doing.

Wherefore they pray to be hence dismissed with their reasonable costs and charges.

### REPLICATION.

And now, this 21st day of April, 1897, the plaintiff joins issue on the matter alleged in the answer.

At the trial plaintiff testified to a possession for twenty-eight years, one witness testified to seventeen years' possession, and a daughter of plaintiff testified to possession on which she did not fix the time. Plaintiff testified to conversations during the taking, and to a threat of one of defendants to take down the fence along the balance of the strip. There was no other testimony on these points at all.

The trial judge made the following findings of fact and conclusions of law:

[1. I find the facts to be that the evidence offered on behalf of the plaintiff establishes an open, notorious, continuous and adverse possession on her part of the strip in controversy from the time of her purchase of the premises in 1867 until the invasion of the same by these defendants in 1895.] [7]

2. That in the spring of 1895 these defendants, without asking the consent of the plaintiff, and against her protest, set back a part of the division fence between the two properties about eleven inches on to the plaintiff's ground, for the distance of about eighty or ninety feet northwestward from Lafayette street.

3. That in committing the said trespass they broke down her shrubbery and bushes, part of her retaining wall on the Lafayette street end, and a board about twelve inches wide from her back fence along the said street.

4. That the defendants also erected a stone post for a corner of their front wall on the Harvey street end, and that the said post stands on the ground of the plaintiff.

[5. That the threat of Mr. Dade, one of the defendants, testified to by the plaintiff, coupled with the fact that the defendants moved back eighty or ninety feet of the fence, is sufficient evidence of their purpose to move in a similar way the rest of the fence.] [5]

CONCLUSIONS OF LAW.

[1. I find the law to be that the erection of the said stone post on the property of the plaintiff is a nuisance which equity will abate by ordering the same to be removed.] [9]

[2. That equity, having acquired jurisdiction over the subject-matter of this controversy as to that part of the fence not yet moved, will decree that the part set over on plaintiff's premises shall be restored to its original position.] [10]

[3. That the plaintiff has neither a full, complete, adequate nor convenient remedy at law by reason of the multiplicity and complexity of suits which would be necessary to adjudicate all the questions of this issue.] [11]

[4. That this is not an ejectment bill, inasmuch as the plaintiff has actual possession of three fifths of the strip in dispute.] [12]

[5. That the prayers of the plaintiff for equitable relief should be granted her according to the terms of the bill.] [13]

The trial judge subsequently entered the following decree:

[And now, July 2, 1898, this cause having come on to be heard at the present term, on bill, answer and proofs, and having been argued by counsel, it is, upon consideration, ordered, adjudged and decreed as follows:

1. That the defendants move that part of the line fence set forward by them upon the premises of the plaintiff back to its original location; that they repair the said plaintiff's rear retaining wall and fence on Lafayette street broken down by them; that they remove the stone post at the Harvey street end of the line fence from the premises of the plaintiff, and that they replace the stones in her front retaining wall which they broke away in erecting the same.

2. That having so restored the said fences and walls, the said defendants be perpetually enjoined from interfering with or altering the visible boundary line between their premises and those of the plaintiff.

3. That the defendants pay the costs of this suit in this Court to date.] [16]

Defendants appealed.

*Errors assigned* were (1) in not finding as a fact as requested by defendants in their second point, as follows: " 2. That

no steps were taken by her to enforce her alleged right until after the work was all done, and the properties conveyed to purchasers thereof." (2) In not finding as a matter of law as requested by defendants in their ninth point as follows: " 9. Plaintiff having knowingly permitted Weekey, Dade and Noble to proceed with the work, cannot now claim a decree in equity against them or their grantees until after her alleged right has been first established at law." (3) In not finding as a fact as requested by defendants in their fourth point, as follows: " 4. That there is no sufficient evidence that defendants or any of them threatened to commit trespass upon that part of the strip in dispute now in plaintiff's possession, or to move and rebuild the fence now existing along the same." (4) In not finding as a matter of law as requested by defendants in their eighth point, as follows : " 8. The responsive denial in the answer of the allegation that defendants have threatened to commit trespass upon the portion of the strip in dispute, now in plaintiff's possession, not having been overcome by sufficient evidence, this bill must be dismissed." (5) In his fifth finding of fact, reciting same. (6) In not finding as requested by defendants in their third point, as follows: " 3. That the evidence is insufficient to show an open, notorious, continuous, adverse and hostile possession by the plaintiff of the land in dispute for full twenty-one years prior to the building of the new fence by Weekey, Dade and Noble." (7) In his first finding of fact, reciting same. (8) In not finding as a fact as requested by defendants in their fifth point, as follows: " 5. The plaintiff's claims have never been established at law." (9) In his first conclusion of law, reciting same. (10) In his second conclusion of law, reciting same. (11) In his third conclusion of law, reciting same. (12) In his fourth conclusion of law, reciting same. (13) In his fifth conclusion of law, reciting same. (14) In not finding as a matter of law as requested by defendants in their seventh point, as follows : " 7. That as by the answer plaintiff's alleged claim is denied upon every ground upon which she put it, and has not been established at law, there can be no decree entered for her in this proceeding." (15) In not finding as a matter of law as requested by defendants in their tenth point, as follows : " 10. Plaintiff's bill should be dismissed at her costs." (16) In entering decree, reciting same.

*Alex. Simpson, Jr.*, for appellants.—Under no possibility can the decree stand against Frech, Newhall and Durnell who were innocent purchasers without notice, so far as it either averred or proved they cannot be debarred of all remedy by ejectment to recover part of the land included in their purchase. It is erroneous as to the other defendants and must be reversed altogether.

Plaintiff's alleged equity is founded upon the averments (1) of a continued possession for upwards of twenty-one years, and (2) of an alleged threat to remove and rebuild the rest of the fence.

The answer is responsive to the bill, as in the above particulars, and it cannot be overcome by the testimony of one witness, but must be met by at least two witnesses, or one witness and strong corroborating circumstances: Horton's Appeal, 13 Pa. 67 ; Campbell v. Patterson, 95 Pa. 447 ; Crombie v. Order of Solon, 157 Pa. 588 ; Delaney v. Thompson, 187 Pa. 343.

This rule in equity is without exception, and must stand though the court thinks the answer improbable or even absurd: Hartley's Appeal, 103 Pa. 23 ; Burke's Appeal, 99 Pa. 350.

In the present case, touching the alleged possession for twenty-one years, we have only the testimony of plaintiff herself. Kate Bussier, the daughter, testified that the fence had been on the old line for some time, but could not say how long. She can remember no alteration ; can remember fences and trees there for ten years ; cannot fix time of alteration within five years ; could not even tell how old she was when changes made.

David McLaughlin's testimony covers only seventeen years, and no other witness fixes any time.

On the question of the threat, plaintiff testifies to it, and no other witness even refers to the matter. What, then, have we ? Plaintiff is in possession of a strip which we do not threaten to dispossess her of, and without that she cannot come into equity touching it: Washburn's Appeal, 105 Pa. 480 ; Bussier v. Weekey, 4 Pa. Superior Ct. 69.

We are in possession of the balance, and as to that this is an ejectment bill: Bussier v. Weekey, 4 Pa. Superior Ct. 69.

Under the pleadings and evidence in this case she has no title by adverse possession to either strip.

In Duncan v. Iron Works, 136 Pa. 478, the Supreme Court,

citing many cases, held that "the right of the plaintiff must be acknowledged or established at law before he can resort to a chancellor." See also Walters v. McElroy, 151 Pa. 549, where the question of equitable jurisdiction in such cases is fully considered.

If plaintiff's claim is built on the curious allegation of some supposed right, because she claims under the statute of limitations, as at one stage of her argument it seemed to be, then the answer to it is that Rhea v. Forsyth, 37 Pa. 503, and Bussier v. Weekey, 4 Pa. Superior Ct. 69, settle the law to the contrary.

*Edwin F. Schively*, for appellee.

OPINION BY SMITH, J., October 9, 1899:

The plaintiff and the defendants Weekey, Dade and Noble, held adjoining lots, separated by a fence, extending from Harvey street to Lafayette street. The land in controversy is a strip of the lot held by the plaintiff, about eleven inches wide, adjoining the land held by the defendants. While the plaintiff was in possession of this, the three defendants named entered upon it, without the plaintiff's consent, removed its retaining walls, on both streets, placed a stone post on the Harvey street front, set the fence back on the lot held by the plaintiff, the width of the strip in dispute, for about ninety feet from the Lafayette street front, and took possession of the portion thus cut off. They afterward conveyed the lot held by them, with the strip in dispute; a part, fronting on Harvey street, to the defendants Frech and Newhall, and the residue, fronting on Lafayette street, to the defendant Durnell. The portion in depth conveyed to each does not appear.

The questions raised by the pleadings and evidence are (1) whether there is adequate proof of the matters alleged by the plaintiff as the ground of the relief prayed for; (2) whether a court of equity may require the defendants to restore the property in dispute to its condition prior to the acts complained of, and withdraw from the possession which they have taken; (3) whether such further invasion of the plaintiff's right is threatened as calls for the interposition of a court of equity for her protection.

The leading matter of fact in the case is the plaintiff's title

to the land in dispute. This land appears to lie outside the line of her lot as described in the conveyance to her, and she claims title to the strip in controversy by possession. The bill avers an open, notorious, exclusive and adverse possession by the plaintiff for twenty-eight years previous to the acts complained of. The answer denies this. There is no evidence for the defendants in relation to it. The plaintiff is the only witness who testifies to the possession averred; the testimony of her other witnesses covering, definitely, not more than seventeen years. The defendants, therefore, contend that the denial of this possession in the answer, being met by the testimony of but one witness, is not overcome, but must stand as conclusive against the plaintiff. The invasion of the plaintiff's right still impending, as set forth in the bill, in connection with the statement of the alleged wrongful acts, is "that they the said three defendants [Weekey, Dade and Noble] have further threatened to commit a similar trespass, and move and rebuild in a similar way the rest of the said fence." This is denied in the answer. The defendants offered no evidence in relation to it, but contend that the evidence in support of the averment is not sufficient to overcome the conclusive effect of the denial.

The legal effect of the possession averred by the plaintiff, in creating a positive title, was lucidly discussed and accurately stated by the learned president of this court, when this case was before us on a demurrer to the bill, 4 Pa. Superior Ct. 69, and nothing can profitably be added to what was there said. If the evidence is sufficient to establish this possession, the plaintiff has shown title, as against the defendant, for all the purposes of the case. We have, then, to consider the question of its sufficiency.

One important purpose—and sometimes the only purpose—of a bill in equity is the discovery of facts lying within the defendant's knowledge. It is primarily an appeal to the defendant's conscience, to answer as to his knowledge respecting the matters, averred in the bill, essential to the maintenance of the right alleged by the plaintiff. The defendant may, in turn, by a cross-bill, appeal to the plaintiff's conscience for a disclosure of facts known to him, essential to the defense. For the purposes of the pending action, or on a separate bill for discovery in aid of an action at law, "either party might claim a

discovery of facts in the knowledge of his adversary, to save expense, or delay, or uncertainty:" Story's Eq. Jur. sec. 74*a*. The defendant may be required to answer interrogatories, based on the averments of the bill; but without these he is still bound to answer the averments as fully as if specifically interrogated. By requiring him to answer, the plaintiff makes him a witness, and his answer becomes evidence in the cause. If unfavorable to the plaintiff, it must nevertheless stand as conclusive unless overcome by a preponderance of testimony. This preponderance is to be found in the testimony of two witnesses on the part of the plaintiff, or of one witness, with corroborating circumstances equivalent, in probative effect, to the testimony of another witness. The reports abound in illustrative cases. " The special evidential efficacy of a responsive answer in equity is due to the fact that the plaintiff, by calling on the defendant to answer the allegations of the bill, appeals to his conscience, accredits him, and pro hac makes him his own witness:" Riegel v. Ins. Co., 153 Pa. 134. " The answer of the defendant to any matter stated in the bill, and responsive to it, is evidence in his own favor. It is not only proof as to the matters of fact of which the bill seeks a disclosure from him, but it is conclusive in his favor unless it is overcome by the satisfactory testimony of two opposing witnesses, or of one witness corroborated by other circumstances and facts which give it greater weight than the answer, or which are equivalent in weight to a second witness. Thus, where the defendant, in express terms, negatives the allegations of the bill, and the evidence is of only one person, affirming what has been so negatived, the court will dismiss the bill. The reason of the rule is this: The plaintiff calls on the defendant to answer an allegation of fact, which he makes; and thereby he admits the answer to be evidence of that fact. If it is testimony, it is equal to the testimony of any other witness; and, as the plaintiff cannot prevail unless the balance of proof is in his favor, he must either have two witnesses, or some circumstances in addition to a single witness, in order to turn the balance:" Story's Eq. Jur. section 1528; Burke's Appeal, 99 Pa. 350; Pusey v. Wright, 31 Pa. 387; Eaton's Appeal, 66 Pa. 483; Bell v. Bank, 131 Pa. 318; Galbraith v. Galbraith, 190 Pa. 225.

To have this probative effect, however, the answer must be

what is described as responsive to the bill. To give it this character, two things are essential. It must be confined to the matters averred in the bill, negativing, qualifying or explaining them, and not going beyond and setting up distinct matters in avoidance or defense. Among the cases in which this principle is illustrated are Kenney's Appeal, 22 W. N. C. 89, Patterson v. Silliman, 28 Pa. 304, Coleman v. Ross, 46 Pa. 180, and Vollmer's Appeal, 61 Pa. 118. As this feature is not present in the case before us, it need not be further discussed. Next, the response must be from the defendant's own knowledge, as he would testify if examined as a witness, except in the rare cases in which he is called on to answer also as to his information and belief. A denial of matters not within his personal knowledge is in no sense responsive ; "it is merely pleading, and as such puts in issue the facts in dispute, without more : " Riegel v. Ins. Co., supra. " Where the answer does not state facts positively, as within the defendant's own knowledge, or does state them inferentially merely, or only according to the defendant's best knowledge and belief, the rule requiring two witnesses, or one witness with corroborating circumstances, to counteract its effect, does not apply. The only effect of the answer in such case is to put the plaintiff to the necessity of proving the facts alleged in his bill : " Daniell's Ch. Pr. chap. 22, sec. 1, p. 846, note 1, and authorities there cited. " If the fact asserted by the defendant is such that it is not and cannot be within his own knowledge, but is in truth only an expression of his strong conviction of its existence, or is what he deems an infallible deduction from facts which were known to him, the nature of his testimony cannot be changed by the positiveness of his assertion, and therefore the answer does not fall within the rule. The answer of an infant, also, by his guardian ad litem, though it be responsive to the bill, and sworn to by the guardian, is not evidence in his favor ; for it is regarded as a mere pleading, and not as an examination for the purpose of discovery : " 3 Greenleaf's Ev. sec. 287. " Courts of equity address themselves to the conscience of the defendant, and require him to answer upon his oath the matters of fact stated in the bill, if they are within his knowledge : " Story's Eq. Jur. sec. 31. " The answer is evidence for the defendant, and avails him as such, because it is a test of his conscience ; but if his response is merely upon hearsay,

his conscience is no way tested as to its truth, and, of course, his answer is not evidence for him : " Stevens v. Post, 1 Beasley (N. J. Eq. Rep.), 408. " His conscience must be tested upon a matter within his own knowledge, to avail him as evidence : " Stevens v. Post, 1 Beasley (N. J. Eq. Rep.), 408. In every case in our own state in which more than one witness has been held necessary to overcome the effect of the answer, the latter has been based on personal knowledge; and whenever the defendant has undertaken to rest on a denial of matters not within his knowledge, such a denial has been held not responsive, in the sense of putting the plaintiff to proof of the matters alleged, by more than one witness, but has been deemed a mere pleading, putting in issue the matters averred and denied. In Socher's Appeal, 104 Pa. 609, a trust ex maleficio was alleged in the bill, and the defendant answered that he had no personal knowledge thereof, but relying on information received denied each and every allegation on the subject. The testimony of one witness only was offered to prove the trust, and there was no evidence in contradiction. As to the sufficiency of this evidence, the supreme court said: " The objection that the alleged trust cannot be established by the testimony of a single witness is not well taken. Appellant's answer contained no such denial of the trust alleged in the bill as makes it evidence for himself. In his formal denial of the trust, he speaks not of his own knowledge, but from information and belief only. It is well settled that such an answer is not evidence ; it is pleading merely, and puts in issue the facts in dispute: Eaton's Appeal, 66 Pa. 483; 3 Greenleaf's Ev. 287. The well recognized rule in equity that a responsive answer must be overcome by the testimony of two witnesses, or one witness and corroborating circumstances, has no application to such a case as is here presented. Like every other fact averred in the bill and not expressly denied by the defendant of his own personal knowledge, the alleged trust might well be established by the testimony of a single witness." In Riegel v. Ins. Co., supra, the defendant was an insurance company, which, pending suit, went into the hands of another corporation as receiver, and the answer was made by the president of the latter. The Supreme Court said: " Mr. Ritchie [president of the receiver company] and his company were entire strangers to the transaction, and neither of them appears

to have had any knowledge of the facts upon which plaintiff's equity is grounded; and, of course, it was impossible for him, as president of the receiver company, to answer otherwise than upon information and belief. In the jurat to his answer, he swears the allegations thereof are true 'so far as they are therein stated of his own knowledge,' etc., but the answer contains not a single allegation that purports to be ' of his own knowledge.' The officers of the insurance company, who were cognizant of the transactions, were the proper persons to deny, if they could of their own knowledge, the averments of the bill, and thus make the answer responsive. The answer of Mr. Ritchie, in this case, is in no sense a responsive answer. It is merely pleading, and as such puts in issue the facts in dispute, without more." In brief, the plaintiff appeals to the defendant's conscience for a discovery of facts within his knowledge. If the answer presents these facts, and they are responsive to the bill, it is conclusive unless overcome by the requisite preponderance of testimony. But if the necessary facts are not within the defendant's knowledge, he can disclose nothing respecting them. He cannot substitute other matters, outside of his personal knowledge, and by swearing to them from information or hearsay make his answer evidence. He is required to answer as to his own act and deed; and his answer is made evidence by his oath " that the matters therein contained, so far as concerns his own act and deed, are true to his knowledge : " Story's Equity Pleading, sec. 872; and the further statement, in the jurat, " that what relates to the act and deed of any other person or persons he believes to be true," is not sufficient to make the answer as to such matters evidence. The general proposition, therefore, that an answer responsive to the bill is conclusive, unless overcome by the testimony of two witnesses, or of one witness with corroborating circumstances equivalent in weight to the testimony of a second witness, is to be understood with the qualifications herein stated.

In the present case, the defendants are strangers to the plaintiff's title, and to the matters alleged in its support. These involve no act or participation, and no knowledge, by the defendants, or any of them, and the bill neither asserts nor implies knowledge on their part to which the plaintiff could appeal for a discovery of facts. It does not, indeed, appear that any of

the defendants had the slightest information respecting the plaintiff's title prior to their acquisition of the adjoining land. Thus the answer in denial of the plaintiff's averment as to title by possession is not made from personal knowledge. As the form of the jurat is not shown in the paper-books, it does not appear on what knowledge, if any, the answer is based. At best, it is but a traverse of the averment, putting in issue the matters averred and denied. Except as to the effect of a responsive answer in equity, the burden of proof and the rules of evidence are the same at law and in equity. In the absence of an answer based on personal knowledge, the title here averred may be proved, as at law, by the testimony of one competent and credible witness. To require more, would demand a greater measure of proof in equity than at law, upon a point lying outside the rule relating to a responsive answer. The testimony of the plaintiff was neither contradicted nor discredited, and it justified the finding as to her possession.

The question as to the apprehended ejectment of the plaintiff from that portion of the strip in dispute still held by her is free from difficulty. The answer admits that possession of part of this strip was taken by the defendants Weekey, Dade and Noble, and is retained by the other defendants. The intention to take possession of the residue, alleged in the bill, is denied in the answer. The answer, however, appears to have been sworn to by the defendant Weekey alone. Hence it cannot avail his codefendants, except as a traverse, since it is not their answer under oath, and he cannot answer of his own knowledge respecting their intention. The plaintiff testifies that the threat indicating the intent was made by the defendant Dade. He neither answered under oath nor testified as a witness in denial of this; nor did any of the defendants testify on the subject. Apart, however, from this failure to answer or testify, the intention of all the defendants may well be inferred from their conduct in the premises. Without color of title, so far as appears, three of them ousted the plaintiff from nearly two fifths of the strip in controversy, on the Lafayette side front, and marked their possession of the Harvey street front by the erection of a stone post. They next conveyed to their codefendants. While the latter may not be personally liable for the wrongful acts of their predecessors in possession, they

are chargeable with knowledge thereof, and with the effect of such acts on the estate transferred to them. Their right is no higher than that of their grantors. They accepted and still hold a possession tortiously obtained, and deny the plaintiff's right to its restoration; they set up a claim to the residue of the land involved in the action, deny the plaintiff's title, and assert a legal right to recover possession. The law has its standard for determining and measuring intent, and the application of this is not controlled by a mere denial. The indicia of intent are to be found in the situation as a whole; in the claims made, the attitude assumed, and the spirit and purpose manifested; the antecedent circumstances, and the end to which they manifestly tend. These indicia, in the present case, fully justify the finding of an intention by the defendants, in the absence of equitable restraint, to complete the seizure of the land in controversy.

The case exhibits a violation by all the defendants of the plaintiff's right as to part of the land involved, through a trespass, an ouster, and a nuisance, with a like violation of her right as to the residue clearly impending. The conclusions of the trial judge as to the remedy are tersely stated, and rest on well settled principles. Though the plaintiff might, at law, recover damages from the original trespassers, and possession from their successors, and might pursue the like remedies upon a further invasion of her rights, it does not follow that she is without remedy in equity. " Jurisdiction in equity depends not so much on the want of a common-law remedy as upon its inadequacy, and its exercise is a matter which often rests in the discretion of the court; in other words, the court may take upon itself to say whether the common-law remedy is, under all the circumstances, and in view of the conduct of the parties, sufficient for the purposes of complete justice, or whether the intervention of chancery may not for that purpose be required and beneficially applied:" Bispham's Eq. sec. 484; Bierbower's Appeal, 107 Pa. 14; Harper's Appeal, 109 Pa. 9; Electric Company's Appeal, 114 Pa. 574; Vollmer's Appeal, 61 Pa. 118; Kirkpatrick v. McDonald, 11 Pa. 387. " When once a court of equity takes cognizance of a litigation, it will dispose of every subject embraced in the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute. If the

jurisdiction once attaches, from the nature of one of the subjects of contest, it may embrace all of them, for equity abhors multiplicity of suits. Thus, in the case last cited (Nutbrown v. Thornton, 10 Ves. 159), the chancellor ruled that where a person is found wrongfully in possession of a farm, over which the court has undoubted power, and also in possession of the stock upon it, at the same time and under the effect of the same wrong, the court will undoubtedly make him account for and deliver back the whole:" McGowin v. Remington, 12 Pa. 56. "If any part of the relief sought be of an equitable nature, the court will retain the bill for complete relief:" Story's Eq. Jur. sec. 73. "Where a court of chancery acquires jurisdiction for any purpose, it will, as a general rule, proceed to determine the whole cause, although in doing so it may decide questions which, standing alone, would furnish no basis of equitable jurisdiction:" 1 Pomeroy's Eq. Jur. sec. 37; Socher's Appeal, 104 Pa. 609. "When this court can determine the matter, it shall not be a hand-maid to the other courts, nor beget a suit to be ended elsewhere [per Lord Chancellor NOTTINGHAM, in Parker v. Dee, 2 Ch. Cas. 200, 201]. And where the court has a jurisdiction as to the end, it must have it, likewise, as to the means:" Fonblanque's Eq. Book VI. ch. 3, sec. 6. The case before us is not one in which the plaintiff is required to establish a right at law before proceeding in equity; nor does it exhibit such laches as to preclude equitable relief.

Nothing in the assignment of error calls for further discussion.

While we affirm, in substance, the findings and conclusions of the trial judge, the decree should be amended, since, as to the measure of liability, it does not distinguish between the original trespassers and their codefendants. The latter had no part in the acts committed by the former, but merely succeeded them in possession; hence the decree, as to them, should be framed with reference to the situation upon and after their entry. The decree is accordingly vacated, and, as an amended decree, it is ordered, adjudged and decreed as follows, viz:

1. That the defendants withdraw from such possession as they jointly or severally have taken of the land described in the bill as belonging to the plaintiff, until their right of possession shall have been established by due course of law.

2. That the defendants Harry Weekey, Francis C. Dade, Jr., and Walter Noble move that part of the line fence set forward by them upon the premises of the plaintiff back to its original location; that they repair the said plaintiff's rear retaining wall and fence on Lafayette street broken down by them; that they remove the stone post at the Harvey street end of the line fence from the premises of the plaintiff; that they replace the stones in her front retaining wall which they broke away in erecting the said post; and that all the parties permit such access to their lands adjacent as shall be reasonably necessary for carrying these provisions into effect.

3. That having so restored the said fences and walls, the defendants be enjoined from interfering with or altering the visible division line between the lands held by them and the lands held by the plaintiff until a right to alter the same shall have been established by due course of law.

4. That the defendants pay the costs of the action and of this appeal.