# Faux *v.* Fitler, Appellant.

*Promissory notes—Evidence—Parol evidence.*

The maker of promissory notes cannot overcome his written promise to pay by his own uncorroborated testimony to the effect that the understanding was that the notes were mere memoranda between him and the plaintiff of a joint-stock speculation, and in the event of a failure to come out whole on the transaction he was not to be called upon to pay them; nor can recovery on the notes be defeated on the ground that they were given in a wagering or gambling transaction, where the. maker's own testimony shows that the stock dealings in question were not transactions of that character.

Argued March 29, 1911. Appeal, No. 382, Jan. T., 1910, by defendant, from judgment of C. P. No. 5, Phila. Co., March T., 1908, No. 818, entered for plaintiff non obstante verdicto in case of William J. Faux v. Alfred E. Fitler. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on promissory notes. Before RALSTON, J.

At the trial the plaintiff produced the notes. The defendant, the maker, testified that he had invited the plaintiff, the payee, to join him in a stock speculation; that the plaintiff had agreed, and had given him $3,000 for that purpose, in three different payments; that when the first money was paid the plaintiff "had his private secretary write out a note for one thousand dollars . . . . which I signed." His testimony then proceeded as follows: "Q. What, if anything, was said by you or him as to that note at the time it was drawn up and signed? A. Well, he persuaded me to sign it because he thought it would be a good thing for him to have in case anything occurred to either of us—he should die or I should die—It would be sort of a memo for his estate to have in case of the death of either. Q. What was said about the note at the time it was signed? A. At the time it was signed I think I expected to close up the account before three months, I

don't think anything was said about it." Concerning the second and third notes the witness testified, "A. Well, he just asked me to sign this note in each case. There was a note to sign in each case. Q. What agreement, if any, was there between you two men at the time you signed that note, as to what that note should be? A. Why, it was a verbal agreement that the note should be considered as a memorandum of the loan of the money. He said that it was understood between them that the notes were mere memoranda of the transaction, a sort of receipt for the money." Further, "Q. What, if anything, was said about your paying the note back, paying the amount of the note? A. Nothing at all."·

In describing the stock transactions the witness said, "I would put up a certain sum of money and the broker would loan the balance and charge interest on it and buy the stock and he held the stock certificates as security for the money he advanced." Referring to the stock thus purchased, he said, "I didn't pay for them, but I bought them outright."

The plaintiff denied absolutely that he had any interest in the defendant's stock speculations or that there were any outside conditions concerning the payment of the notes. He testified that the notes simply represented three separate loans to the defendant for their face value, none of which had been repaid.

The verdict was for the defendant; but the court below entered judgment n. o. v. in favor of the plaintiff for $4,587, representing the principal of notes with interest.

*Errors assigned* were (1, 2, 5) refusing binding instructions for the defendant; setting aside verdict in his favor; entering judgment n. o. v. for plaintiff; (3, 4) "withdrawing from the consideration of the jury the question as to whether the transaction of which the notes were a part was a wagering or gambling transaction," and refusal to charge that if the money was loaned to the plaintiff with the understanding that it was to be used to speculate in

stocks on a margin without any intention to buy and pay for them outright, the plaintiff could not recover.

*Francis M. McAdams,* with him *William H. Wilson* and *Joseph P. Rogers,* for appellant, cited: Keller v. Cohen, 224 Pa. 434; Adams v. Ashman, 203 Pa. 536; Conmey v. MacFarlane, 97 Pa. 361; Grubb v. Cottrell, 62 Pa. 23.

*Samuel W. Cooper,* for appellee, cited: Hill v. Gaw, 4 Pa. 493; Butler v. Keller, 19 Pa. Superior Ct. 472; Fuller v. Law, 207 Pa. 101.

OPINION BY MR. JUSTICE MOSCHZISKER, May 17, 1911:

The plaintiff sued the defendant to recover on three promissory notes, all drawn in regular form, and each of them given by the latter for money received from the former.

When this case was here before (223 Pa. 568) on the question of the sufficiency of the affidavits of defense, we said that it would be "the duty of the trial judge to submit for the consideration of the jury any meritorious defense the defendant may present." The question as to whether or not the defendant would be able to sustain his defense by the proper measure of proof was not then before us: Gandy v. Weckerly, 220 Pa. 285. It was for the trial judge to pass upon the question of the sufficiency of the evidence when the defendant came to present his defense.

The only real evidence produced by the defendant to overcome the written promissory notes was his own testimony, and we agree with the court below that this was entirely insufficient for the purpose: Phillips v. Meily, 106 Pa. 536; Fuller v. Law, 207 Pa. 101. While the defendant attempted to escape liability upon the plea that the understanding was that the notes were mere memoranda between him and the plaintiff of a joint-stock speculation, and that in the event of a failure to come out whole on the transaction, he was not to be called upon to pay

them, yet he nowhere in his testimony states that he ever said to the plaintiff, or that the plaintiff said to him, that the notes were not to be paid according to the terms of the written contracts. It is a very usual thing when one friend lends money to another and requests a note as an acknowledgment, to remark as a matter of politeness that the written promise to pay is merely taken as a memorandum of the transaction to cover the contingency of death. The testimony of the defendant concerning the making of the notes in suit would be entirely consistent with such an incident. It may be that Mr. Fitler thought and understood that he would not be called upon to pay if the stock transactions were not a success, but the evidence falls far short of justifying a finding that any such contract existed between the parties. The first, second and fifth assignments of error are overruled.

The third and fourth assignments are overruled for the reason that the defendant's testimony shows that the stock dealings in question were not wagering or gambling transactions.

The judgment of the court below is affirmed.