Volkmar et ux. *v.* Vladi, Appellant.

Argued November 14, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Ellis Brodstein,* for appellant.

*Leonard G. Yoder,* for appellees.

OPINION BY LINN, J., January 25, 1929:

The parties were landlord and tenant. The leasehold was "the first floor and basement ...... and the lot ...... in the rear bounded ......" The use was

"for the purpose of a fruit and vegetable store and confectionery and grocery." The landlord "agrees to furnish heat ......" The tenant occupied the premises about two years and five months but moved out about a year before the end of the term. The landlord then entered judgment under a power in the lease for an amount that is not disputed. The tenant filed a petition to open judgment on the ground that he was not in default, and averred in substance, that the landlord had evicted him. This eviction, he contended, resulted from the landlord's failure to supply heat to a particular portion of the leasehold as required by the lease, and from a dispute regarding the use of a lock on the rear entrance to the basement. Depositions were taken; the court dismissed the petition; and the tenant has appealed.

In Stevenson v. Dersam, 275 Pa. 412, 415, the court said, in considering an appeal from the refusal to open a judgment: "In passing upon the action taken below, it must be borne in mind that such an application is an appeal to the equitable power of the court, and the petitioner must make out a case which would justify a chancellor in entering the decree prayed for: Kline v. Fitzgerald Bros., 267 Pa. 468. The question for us to determine is whether there has been a rightful exercise of the discretion lodged in the lower court: Kaier v. O'Brien, 202 Pa. 153." See, too, Warren Sav. Bk. Co. v. Foley, 294 Pa. 176, 185. Applying the rule we must affirm the order appealed from. We understand from the evidence that portions of the building over that leased to the defendant are occupied by other tenants of the plaintiff and that the boiler furnishing the steam heat for the entire building is in the basement. When leased, there was a large radiator in the larger of the rooms let to defendant; in February or March, 1926, the tenant disconnected the radiator which, as we understand the evidence, left him without heat in that part of the

building. He explained that he disconnected it under the impression that plaintiff would "put the radiator in the third room." This was not done. It seems that the dispute about inadequate heat related to this third room which appears to have been a structure of galvanized iron built to the rear of the main brick building with access by a door. The following evidence relates to it:

"Q. Do I understand that the front part of the building was a brick building and this was attached to the brick building?

"A. Absolutely separate.

"Q. How many sides to it?

"A. Two sides open—one side went up against the adjoining property to the east, and the north side of it adjoined the main building.

"Q. It wasn't open, was it?

"A. No. It had windows in it.

"Q. And that was made of sheet iron?

"A. All galvanized iron.

"Q. Not plastered?

"A. No."

In this structure the tenant built, what he called in the evidence, an "inside wooden room" and it was into the inside wooden room that he wished the landlord to remove and connect up the radiator which the tenant had disconnected in the main room, and which the landlord refused to do; that refusal led to the tenants' removal in March, 1927, more than two years after he had taken possession.

As the front part of the first floor leased apparently contained adequate heating facilities, and as there is no complaint that they were not adequately heated until the tenant cut off the heat, and as there was no heating facility in the outside room when the lease was made, it would seem clear that the phrase in the lease that the landlord "agrees to furnish heat" was intended to refer to the building as then con-

structed and equipped. If the parties had intended that heat should be supplied to what was apparently an out-building with several sides of galvanized iron, it would seem that more specific phraseology covering it would have been employed than the general expression used; the expression, we think, is limited in its meaning to the premises as equipped when leased. This inference of intention finds support in the conduct of the tenant in disconnecting the only radiator in the leasehold in the hope of having it installed in the outside room.

While the leasehold included the basement, the landlord and his employees were also entitled to use it and have such access to it as was necessary to attend to the boiler in the basement which supplied heat to the entire building. Shortly before the tenant moved out, he and the landlord had a dispute about the use of the lock and keys to the basement door; it is unnecessary to recite the details of the dispute; we consider it trivial.

The case does not call for a discussion of what constitutes an eviction by a landlord. There was no abuse of discretion, and that is the limit of our inquiry.

The order is affirmed.